## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

**WILEY TOLER,**

  **Plaintiff,**

**v.**

**JEFFERY TROUTT, D.O., and
KATRYNA FRECH, in her Individual and
Official Capacities,**

  **Defendants.**

)
)
)
)
)
)
)
)
)
)
)
)
)

**Case No. CIV-13-1025-F**

## REPORT AND RECOMMENDATION

  Plaintiff Wiley Toler, a state prisoner appearing *pro se*, brings this action pursuant to 42 U.S.C. § 1983, alleging a violation of his constitutional rights. The matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). Before the Court is Defendants' Motion to Dismiss or in the alternative Motion for Summary Judgment (ECF No. 31) to which Plaintiff has responded and Defendants have replied (ECF Nos. 34, 35). Also before the Court is Plaintiff's Motion for Summary Judgment (ECF No. 37), to which Defendants responded and Plaintiff replied (ECF Nos. 44, 45). Thus, the motions are at issue and ready for disposition. For the reasons set forth below, it is recommended that Defendants' Motion to Dismiss/Motion for Summary Judgment be **GRANTED** in part and **DENIED** in part. It is further recommended that Plaintiff's Motion for Summary Judgment be **DENIED**.

## I. BACKGROUND AND ISSUES PRESENTED

  Plaintiff is an inmate confined at James Crabtree Correctional Center ("JCCC") in Helena, Oklahoma. By this action, Plaintiff sues Katryna Frech, R.N., a Correctional

Health Services Administrator at the James Crabtree Correctional Center ("JCCC") and Jeff Troutt, D.O., the Chief Medical Officer at JCCC. (ECF No. 1:1). By his Complaint, Plaintiff purports to set forth three causes of action against each Defendant.

In Count I, Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Specifically, Plaintiff contends that he suffers from chronic pain related to previously sustained nerve damage resulting from a degenerative condition of the spine. (ECF No. 1:2). Plaintiff alleges that Dr. Troutt refused to prescribe the pain medication, Neurontin, although it was previously prescribed by physicians at other jail facilities prior to Plaintiff's transfer to JCCC, as well as by medical specialists. He alleges that the failure to prescribe Neurontin has caused him to suffer severe, chronic pain since his transfer to JCCC in April 2013. He further contends that the only medications Dr. Troutt prescribed to alleviate his pain are not effective.

Plaintiff purports to set forth a second count, however, it is essentially an extension of Count I rather than a separate, independent legal claim. In "Count II", Plaintiff contends that Defendants' actions present a pattern of reckless and negligent conduct that further supports a finding of deliberate indifference to his medical needs. (ECF No. 1:22-24).

Finally, in Count III, Plaintiff alleges that Defendants violated his "legal right to a fair and adequate grievance process." (ECF No. 1:25). In this claim, Plaintiff requests

the Court investigate whether any failure to exhaust his administrative remedies was "due to the acts or omissions of prison officials." *Id.*[1]

## II. FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

### A. STANDARD OF REVIEW FOR MOTION TO DISMISS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556); *see also Gee v. Pacheco*, 627 F.3d 1178, 1184 (10th Cir. 2010). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

---

[1] The court notes that within Count III, Plaintiff also requested the court invoke supplemental jurisdiction to consider state law claims under Okla. Stat. tit. 57, § 566.3 and Okla. Stat. tit. 76, §§ 5, 21. However, none of the statutes upon which Plaintiff relies provide a private cause of action. Okla Stat. tit. 57, § 566.3(G) simply authorizes the Oklahoma Department of Corrections to adopt a grievance procedure. Okla. Stat. tit. 76, § 5, commonly known as the Good Samaritan Act, provides immunity to a contractual stranger who offers medical aid to another in an emergency situation. Finally, Okla. Stat. tit. 76, § 21 codifies the common law doctrine of *res ipsa loquitor*.

### B. Claims Subject to Dismissal

#### 1. Claims Against Defendants in their Official Capacities

Plaintiff does not indicate in his Complaint whether he intended to name each Defendant in both their individual and official capacities, though he requested compensatory and punitive damages in addition to declaratory and injunctive relief. (ECF No. 1:34, 37-38). Both Defendants Troutt and Frech are identified as state employees of the Department of Corrections ("DOC"). (ECF No. 1:1, ECF No. 31:9). In their Motion to Dismiss, Defendants contend that as DOC employees, official capacity claims against them must be dismissed as the claims are barred by Eleventh Amendment immunity. (ECF No. 31:5). Indeed, Plaintiff concedes in his response to Defendants' Motion to Dismiss/Motion for Summary Judgment that "defendants are immune from suit for money damages in their official capacities." (ECF No. 34:4).

"To state a claim under [42 U.S.C.] § 1983 a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Neither a state, a state agency, nor an official of the State acting in his or her official capacity, is a "person" for purposes of § 1983. *See Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 64, 71 (1989). *See also Branson School District RE-82 v. Romer*, 161 F.3d 619, 631 (10th Cir. 1998) (when suit is brought against a state official in his official capacity, the real party in interest is the state). Thus, Eleventh Amendment sovereign immunity precludes suits against states, state agencies and state officials sued in their official capacities.

Unlike other jurisdictional issues, a State may waive the defense of sovereign immunity. The State of Oklahoma has not, however, waived its sovereign immunity defense against § 1983 claims brought in federal district court cases. *See Ramirez v. Okla. Dep't of Mental Health*, 41 F.3d 584, 589 (10th Cir. 1994). It is therefore recommended that all official capacity claims seeking monetary damages against Defendants in their official capacities be dismissed with prejudice.

### 2. Count II: Defendant's Pattern of Reckless and Negligent Conduct

In Count II, Plaintiff sets forth multiple conclusory statements regarding Defendants' allegedly negligent acts and/or an alleged pattern of "longtime negligence and deliberate indifference." (ECF No. 1:22-23). As noted above, this claim appears to essentially be an extension of the Eighth Amendment claim set forth in Count I. However, to the extent Plaintiff has set forth a claim based on negligence, the court notes that it is well established the negligent conduct of a prison official is insufficient to rise to the level of a constitutional violation. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Accordingly, it is recommended that Defendant's Motion to Dismiss Count II be granted and Plaintiff's Motion for Summary Judgment as to the same be denied.

### 3. Count III: Right to Grievance Process

In Count III, Plaintiff contends that Defendants "denied Plaintiff's legal right to a fair and adequate grievance process." (ECF No. 1:25-26). In his Response to Defendants' dispositive motion, he clarified this claim further citing to Okla. Stat. tit. 57, § 566.3(G), which authorizes the DOC to adopt a grievance procedure, and explained that his claim was not based on a lack of access to the courts but instead on his

allegation that Defendants interfered with and obstructed his attempts to exhaust administrative remedies. (ECF No. 34:20).

Prison grievance procedures do not create a protected liberty interest and, therefore, do not implicate a prisoner's due process rights. *Murray v. Albany Cnty. Bd. of Cnty. Comm'rs*, No. 99-8025, 2000 WL 472842, at *2 (10th Cir. April 20, 2000). ("[P]rison grievance procedures do not 'give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment.'") (quoting *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993)). Further, a state's voluntary provision of an administrative grievance process does not create a liberty interest in that process. *Boyd v. Werholz*, 443 Fed. Appx. 331, 332 (10th Cir. 2011) (unpublished) (citing *Bingham v. Thomas,* 654 F.3d 1171, 1177–78 (11th Cir. 2011) (observing that inmates have no constitutionally-protected liberty interest in access to prison grievance procedure); *Buckley,* 997 F.2d at 495 (per curiam) ("A prison grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest ....")). *See also Spry v. McKune*, 479 Fed. Appx. 180, 181 (10th Cir. 2012) (affirming district court's dismissal of plaintiff's due process claim premised upon unavailability of administrative remedy for failure to state a claim upon which relief can be granted); *Anderson v. Colo. Dep't of Corr.*, No. 98-1477, 1999 WL 387163, at *2 (10th Cir. June 14, 1999) (holding that a state inmate's § 1983 "allegations relating to the requirements of the Department of Corrections grievance procedure do not support a due process claim because those procedures do not create any liberty interest in the incarcerated petitioner"); *Adams v. Rice*, 40 F.3d

72, 75 (4th Cir. 1994) (holding that the Constitution creates no entitlement to grievance procedures or access to such procedures voluntarily established by the state); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (holding that federal prison administrative remedy procedures do not "in and of themselves" create a liberty interest in access to that procedure; finding the prisoner's right to petition the government for redress is the right of access to the courts); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (holding there is no legitimate claim of entitlement to a grievance procedure).

This is not to say that a correctional facility can freely obstruct an inmate's ability to use the grievance process. "Where prison officials thwart or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010). However, as established above, inmates do not have a protected liberty interest in pursuing formal grievance procedures and therefore, any separate legal claim based on the same inherently fails. Accordingly, the undersigned recommends that Defendants' Motion to Dismiss Plaintiff's Count III be granted. For these same reasons, Plaintiff's Motion for Summary Judgment as to Count III should be denied.

### III.  SUMMARY JUDGMENT AS TO EIGHTH AMENDMENT CLAIM

#### A.  Standard of Review for Summary Judgment

Summary judgment shall be granted where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment,

the court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party. *Calhoun v. Gaines*, 982 F.2d 1470, 1472 (10th Cir. 1992); *Manders v. Oklahoma*, 875 F.2d 263, 264 (10th Cir. 1989). A dispute is "genuine," when viewed in this light, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are "facts that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. After the movant has fulfilled his initial burden of showing an absence of a genuine issue of material fact and entitlement to judgment as a matter of law, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of material fact. *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000). The nonmoving party "may not rest upon mere allegations" in his pleading to satisfy this requirement. *Anderson*, 477 U.S. at 256. Rather, Federal Rule of Civil Procedure 56 "requires the nonmoving party to go beyond the pleadings and by … affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate "'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56).

Because the undersigned has relied on the documents attached to the court-ordered Special Report in determining the disposition of Plaintiff's medical claims, Defendants' motion regarding such claims is treated as a motion for summary judgment. *See* Fed. R. Civ. P. 12 (d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

**B. The Exhaustion Requirement**

The Prison Litigation Reform Act of 1995 (PLRA) requires a prisoner to exhaust all available administrative remedies before resorting to a § 1983 action in federal court. Specifically, 42 U.S.C. § 1997e(a) provides as follows: "No action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* "[E]xhaustion is mandatory under the PLRA and ... unexhausted claims cannot be brought in court." *Jones v. Bock,* 549 U.S. 199, 211 (2007).

A prisoner, such as Plaintiff, successfully exhausts administrative remedies by completing the administrative review process established by the prison grievance procedure. *Id.* at 218. "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell,* 304 F.3d 1030, 1032 (10th Cir. 2002). "To exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient." *Fields v. Okla. State Penitentiary,* 511 F.3d 1109, 1112 (10th Cir. 2007). Courts, however, "are obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar–Avellaveda v. Terrell,* 478 F.3d 1223, 1225 (10th Cir. 2007).

**1. ODOC Grievance Process**

When determining whether administrative remedies have been exhausted, the Court must look to the grievance process at the institution to which the inmate is

confined. As Plaintiff is confined in an Oklahoma Department of Corrections (ODOC) facility, that process is set forth in the Offender Grievance Process, OP-090124. (ECF No. 30:40-58).

The ODOC grievance policy first requires an initial, informal attempt to resolve the issue followed by a two-part formal attempt; grievable issues include actions related to medical care. (ECF No. 30:44-45). Attempting an informal resolution starts by speaking with the "appropriate staff within three days of the incident." (ECF No. 30:45). Next, the offender must file a request to staff within seven calendar days of the alleged incident. *Id.* If the offender does not receive a response to his request to staff within thirty days, he may file a grievance to the facility head, or the facility's health services administrator, stating that he has submitted a request to staff but received no response. (ECF No. 30:46; ECF No. 30:41 (definition of "reviewing authority")).

After receiving a response to the request to staff, the inmate may file a formal grievance to the facility head within 15 days after filing the request to staff, or receiving the facility's response, whichever is later. (ECF No. 30:46-47). If an offender does not receive a response from the reviewing authority within thirty days, he may send a grievance to the administrative review authority stating that he filed a grievance but received no response. (ECF No. 30:48).

Upon receiving the grievance response from the reviewing authority, the inmate may appeal to the administrative review authority asserting either newly discovered evidence or probable error committed by the reviewing authority. (ECF No. 30:50-52). The final ruling of the administrative review authority will satisfy the grievance process

and the inmate will have exhausted available administrative remedies. (ECF No. 30:52). *See also Thomas v. Parker,* 609 F.3d 1114, 1117 (10th Cir. 2010) ("The ODOC grievance process has a requirement of informal consultation with staff, then three written steps: a Request to Staff form, a formal grievance, and an appeal to the administrative review authority.").

### 2. Plaintiff's Exhaustion of Administrative Remedies

In the present case, all parties spend a great deal of time in their dispositive motions on the issue of whether Plaintiff exhausted his administrative remedies. However, Defendants concede "Plaintiff properly exhausted two (2) grievances while at JCCC." (ECF No. 31:6). Specifically, Defendants state, "According to ODOC records, Plaintiff submitted two grievances all the way through the appeals process, numbers JCCC-13-74B and JCCC-13-89." (ECF No. 31:18). Grievance Number JCCC-13-74B specifically relates to Plaintiff's Eighth Amendment claim. In that grievance, Plaintiff complained that Dr. Troutt refused to prescribe Neurontin for his chronic pain, that this medication was previously prescribed by a specialist and his previous correctional facility, and that it is effective. (ECF No. 30:34-35). In the Grievance Response from Reviewing Authority, Defendant Frech responded that Plaintiff's records reflect Neurontin was discontinued on April 24, 2013 and that a trial prescription for Naproxen was written for pain control. (ECF No. 30:33). She further stated, "Relief Granted." *Id.* While it is curious that Defendant Frech concluded that the prescribing of a different pain medication constituted a granting of relief, the fact remains that at that point, there was nothing for Plaintiff to actually appeal. Presumably, this is why even

Defendants concede that Plaintiff exhausted his administrative remedies with regard to this grievance.

In spite of their concession that Plaintiff exhausted this grievance, Defendants contend they are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies. (ECF No. 31:16-13). While there were other Requests to Staff and Grievances that Plaintiff failed to fully exhaust, the PLRA only requires inmates to exhaust their administrative remedies one time prior to filing suit.

In light of the above findings, it is not necessary to address Plaintiff's other attempts to utilize the grievance process. However, the undersigned does deem at least one other attempt noteworthy. On May 30, 2013, Plaintiff submitted a Request to Staff to Dr. Troutt inquiring as to why he refused to prescribe Neurontin for Plaintiff's chronic pain. (ECF No. 30:26, 216). It was returned unanswered on June 3, 2013. (ECF No. 30:26). When Plaintiff attempted to file a grievance related to the same, Defendant Frech returned his grievance with a form check list comprised of 21 statements used to describe why a grievance is being returned unanswered. Defendant Frech marked No. 1, "No staff response affixed to the 'Request to Staff' and No. 21, which is marked "Other" and she typed in the following: "Request to Staff attached to grievance was returned to Offender unanswered on 6/03/2013." (ECF No. 30:28).

The ODOC grievance process provides that if an inmate does not receive a response to his Request to Staff within thirty days, then he can file a grievance related to the same. (ECF No. 30:46). However, with regard to Plaintiff's Request to Staff dated May 30, 2013, Plaintiff did not fail to wait the requisite 30 days before filing a

grievance. Instead, the Request to Staff was specifically returned to him unanswered and date stamped, June 3, 2013. (ECF No. 30-26). In light of Defendant Frech's response to his subsequent grievance, it appears that once the Request to Staff was returned unanswered, Plaintiff was prohibited from pursuing his administrative remedies further, at least with regard to that particular Request to Staff. Defendants are reminded that when officials thwart or hinder an inmate's ability to utilize the grievance procedure, the court will excuse a subsequent failure to exhaust. *Little*, 607 F.3d at 1250.

In any event, the undersigned has found that Plaintiff exhausted his administrative remedies with regard to his Eight Amendment claim. Therefore, the court recommends Defendants' Motion for Summary Judgment based on Plaintiff's alleged failure to exhaust his administrative remedies be denied.

### C. Personal Participation

Both Defendants request summary judgment against Plaintiff's Eighth Amendment claim based on their argument that they did not "personally participate in any violations of his constitutional rights." (ECF No. 30:13). "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). Supervisory status alone does not create § 1983 liability. *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008). Moreover, merely denying grievances or requests to staff does not constitute "personal participation" that will support a cause of action under § 1983. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).

Defendant Frech was employed as the Health Services Administrator for the JCCC. As such, she was the Reviewing Authority and responsible for reviewing and answering grievances. (ECF No. 30:41, 46-47). Plaintiff's allegations regarding Defendant Frech pertain only to his attempts to utilize the grievance process and not to his medical care. While Plaintiff does attempt to assert a distinct legal claim related to the grievance process, as discussed above, his allegations in that regard do not implicate a constitutional right. As such, it is recommended that Defendant Frech's request for summary judgment be granted against Plaintiff's Eighth Amendment claim based on her lack of personal participation. Likewise, the undersigned recommends Plaintiff's Motion for Summary Judgment with regard to his Eighth Amendment claim be denied as to Defendant Frech.

On the other hand, Dr. Troutt is not entitled to summary judgment based on a lack of personal participation in the alleged violation of Plaintiff's Eighth Amendment rights. Plaintiff's claim rests entirely on the medical care provided by Dr. Troutt. It is nonsensical to argue that Dr. Troutt did not personally participate in the factual basis underlying Plaintiff's claim. Indeed, the argument set forth in Defendant Troutt's request for summary judgment regarding participation is actually based on the merits of Plaintiff's claim rather than Defendant Troutt's participation in the underlying facts. (ECF No. 31:13). Thus, it is recommended Defendant Troutt's request for summary judgment based on a lack of personal participation be denied.

### D. Plaintiff's Medical Records

Plaintiff was transferred to the JCCC on April 23, 2013. (ECF No. 31:1). Records show that upon his arrival, Plaintiff had been taking various medications including Neurontin at 800 mg, two times per day. (ECF No. 30:161). The prescription at the time of his transfer had been issued on November 12, 2012 and was scheduled to go through July 1, 2013. (ECF No. 30:161). Records further show that Plaintiff had "chronic lower back pain times 2" and an MRI had been performed three years prior to his transfer. (ECF No. 30:157).

Upon Plaintiff's transfer on April 24, 2013, Dr. Troutt discontinued Plaintiff's prescription for Neurontin and prescribed Naprosyn for pain. (ECF No. 30:33, 152). On May 31, 2013, Dr. Troutt examined Plaintiff and noted that he was awaiting an MRI for his back. (ECF No. 30:152). He further noted that Plaintiff indicated only Neurontin would work for his back pain. (ECF No. 30:149). On that same date, Dr. Troutt discontinued Plaintiff's prescription of Naprosyn and began a trial of an SSRI. (ECF No. 30:152).

On June 24, 2013, an MRI was performed that resulted in the following findings:

> Degenerative disc disease at multiple levels as described above. This is most prominent at L4-L5 and L5-S1. There is mild/moderate neuroforaminal narrowing at L4-L5 and severe bilateral neuroforaminal narrowing at L5-S1. Additionally, there are predominant type II along with type III changes at L5-S1 with some endplate edema, consistent with type I changes as well.

(ECF No. 30:168-69). Dr. Troutt noted these findings in his records and requested a "neurosurgery consult for recommendations." (ECF No. 30:142-44).

The neurosurgery consult did not occur until November 2013. In the meantime, Plaintiff saw Dr. Troutt consistently and complained of chronic back pain. (ECF No. 30:134-37, 138-40). On November 25, 2013, Plaintiff was seen at the University of Oklahoma Medical Center by Dr. Rabb and Dr. Strickland for the neurosurgery consult previously requested by Dr. Troutt. (ECF No. 30:163-66). The neurosurgeons diagnosed Plaintiff with lumbar radiculopathy and recommended Neurontin to be taken three times per day and increased as tolerated for nerve pain. *Id.* Following this examination, on December 9, 2013, Dr. Troutt re-prescribed Naprosyn and Elavil for pain. (ECF No. 30:118).

At Dr. Troutt's request, Plaintiff was examined again by Dr. Rabb and Dr. Strickland on April 21, 2014. (ECF No. 48-1:1). Again, the neurosurgeons recommended Neurontin for nerve pain and again Dr. Troutt did not prescribe it. *Id.*[2] Neurontin was not prescribed for Plaintiff until September 11, 2014 when Dr. Troutt was on leave and Plaintiff was examined by Dr. Bruce Meyer who was providing medical care at JCCC during Dr. Troutt's absence. (ECF No. 54:1-2, ECF No. 54-1:1).[3]

---

[2] The Physician Notes from Plaintiff's April 21, 2014 visit indicate a recommendation of Gabapentin, which is the generic form of Neurontin.

[3] On September 24, 2014, Plaintiff filed a Motion for Preliminary Injunction requesting the court prohibit Dr. Troutt from discontinuing Dr. Meyer's prescription for Neurontin. (ECF No. 51). On September 30, 2014, the undersigned issued a Report and Recommendation recommending enjoining Defendants from discontinuing Plaintiff's prescription of Neurontin until they filed a response to Plaintiff's Motion for Preliminary Injunction. In Defendant's Response, filed October 9, 2014, they asserted that Dr. Troutt does not intend to discontinue Plaintiff's prescription of Neurontin. (ECF No. 54:3). The court adopted the Report and Recommendation on October 31, 2014. (ECF No. 55).

**E. Deliberate Indifference to Serious Medical Needs**

To prevail on his Eighth Amendment claim, Plaintiff must demonstrate: (1) objectively, the harm he complains of is sufficiently "serious" to merit constitutional protection and (2) Defendants were subjectively aware of a substantial risk to Plaintiff's health or safety and acted in purposeful disregard of that risk. *See Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). "A medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)). Moreover, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Beginning with the objective prong of Plaintiff's deliberate indifference claim, the record before the court is replete with evidence that Plaintiff's back condition and the resulting pain constitute a serious medical condition. Plaintiff's medical records indicate that he was being treated for chronic pain prior to his transfer to JCCC. (ECF No. 30:161). The MRI Dr. Troutt ordered in June 2013 showed that Plaintiff suffered from moderate to severe degenerative disc disease. (ECF No. 30:168-69). Two neurosurgeon consults conducted in 2013 and 2014 resulted in further diagnoses and pain medication recommendations. (ECF No. 30:163-66, ECF No. 48-1:1). Additionally, Plaintiff consistently complained of chronic and severe back pain that is seemingly consistent

with multiple diagnoses. While "not every twinge of pain suffered as the result of delay in medical care is actionable," *Sealock*, 218 F.3d at 1210, the record suggests that Plaintiff's pain was not *de minimus*. There is, then, at the very least a question of fact as to whether Plaintiff can meet the "sufficiently serious" criteria for an Eighth Amendment claim.

The subjective prong of the deliberate indifference test requires the plaintiff to present evidence of the prison official's culpable state of mind. *See Estelle,* 429 U.S. at 106. The subjective component is satisfied if the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Verdecia v. Adams*, 327 F.3d 1171, 1175–76 (10th Cir. 2003) ("Deliberate indifference requires that the defendant's conduct is in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, or that the conduct disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights." (internal citations omitted)).

Significantly, a medical difference of opinion is not actionable under the Eighth Amendment. *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1142 (10th Cir.2005). Even a disagreement between experts does not give rise to an Eighth Amendment claim of deliberate indifference. *See Supre v. Ricketts*, 792 F.2d 958, 962–63 (10th Cir. 1986). "If a prison doctor [] responds to an obvious risk with treatment that is patently unreasonable, a jury may infer conscious disregard." *Self v. Crum*, 439 F.3d 1227, 1232

(10th Cir. 2006). "But where a doctor orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted under our case law." *Id*. at 1232–33.

In the present case, when Plaintiff was initially transferred to JCCC and Dr. Troutt discontinues Plaintiff's prescription of Neurontin but prescribes other pain medication, it appears there is nothing more than a disagreement between an inmate and a prison physician. Such a circumstance, when coupled with the fact that Dr. Troutt is continuing to examine Plaintiff and ordering further testing, does not generally support a deliberate indifference claim. Courts have been very clear that the Eighth Amendment "does not guarantee a prisoner the treatment of his choice." *Sherman v. Klenke*, ___ F.Supp.3d _____, 2014 WL 4436628, *14 (D. Colo. 2014) (citing *Ledoux v. Davies*, 961 F.2d 1536, 1527 (10th Cir. 1992). *See also Feder v. Sposato*, No. 11–CV–193, 2014 WL 1801137, at *9 (E.D.N.Y. May 7, 2014) ("where the dispute concerns not the absence of help, but the choice of a certain course of treatment, or evidences mere disagreement with considered medical judgment, [a court] will not second guess the doctors").

A question of fact arises as to whether Defendant Troutt was deliberately indifferent to Plaintiff's medical needs following Plaintiff's two visits to the neurosurgeon for consultative examination. While a disagreement between medical providers may not rise to the level of a constitutional violation, the Tenth Circuit has recognized that a prison doctor's disregard of a private doctors prescribed treatment can constitute an Eighth Amendment violation. *See Alloway v. Hodge*, 72 Fed. Appx. 812 (10th Cir. 2003).

Dr. Troutt's actions do not appear to simply represent a mere disagreement between medical professionals regarding proper medication. The MRI Dr. Troutt ordered had already confirmed moderate to severe degenerative disc disease consistent with Plaintiff's complaints of severe pain. Dr. Troutt refused to prescribe Neurontin after Dr. Rabb and Dr. Strickland, the very specialists to whom he had sent Plaintiff "for recommendations" ordered it for nerve pain. Moreover, Dr. Troutt did not prescribe new medication following the consults but continued to prescribe medication that had already proven ineffective. Not every twinge of pain is actionable, but "[t]he Eighth Amendment forbids 'unnecessary *and wanton* infliction of *pain*." *Sealock*, 218 F.3d at 1210 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)) (emphasis in original). The record is devoid of any medical rationale for Dr. Troutt's decisions in this regard. The undersigned cannot infer any explanation other than a willful disregard of an excessive risk of harm to Plaintiff's health.

This is not to say that Plaintiff will prevail on this claim at trial. Defendant Troutt may be able to clarify his reasoning. The undersigned is tasked with deciding only whether a question of fact exists regarding Plaintiff's allegation that Defendant Troutt exhibited deliberate indifference to Plaintiff's medical needs. For the reasons set forth above, the undersigned finds that a question of fact does indeed exist and therefore, Defendant Troutt's Motion for Summary Judgment should be denied as to Plaintiff's Eighth Amendment claim. It is further recommended that Plaintiff's Motion for Summary Judgment also be denied as to his Eighth Amendment claim against defendant Troutt.

**F. Qualified Immunity**

Finally, Defendant Troutt also argues that he is entitled to summary judgment based on qualified immunity. After a defendant invokes qualified immunity, the plaintiff must demonstrate that the defendant's actions violated a specific constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the plaintiff fails to meet his burden on this threshold inquiry, the qualified immunity inquiry comes to an end. *Id.* If, as in this case, the plaintiff meets this initial burden, he must then show that the constitutional right was "clearly established" prior to the challenged action. *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Holland v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001) (internal quotations omitted). "[T]here is little doubt that deliberate indifference to an inmate's serious medical need is a clearly established constitutional right[.]" *Mata v. Saiz*, 427 F.3d 745, 749-50 (10th Cir. 2005). Therefore, Dr. Troutt is not entitled to qualified immunity and the undersigned recommends his motion for summary judgment be denied.

**RECOMMENDATION**

After careful consideration of the issues in this case, it is recommended that the Defendants' dispositive motion be **GRANTED** in part and **DENIED** in part. Specifically, it is recommended that Defendants' Motion to Dismiss as to all claims against Defendants in their official capacities and as to Plaintiff's Counts II and III be GRANTED for failure to state a claim upon which relief can be granted. It is recommended that

Defendant Frech's Motion for Summary Judgment as to Plaintiff's Eighth Amendment claim be GRANTED. It is recommended that Dr. Troutt's Motion for Summary Judgment as to Plaintiff's Eighth Amendment claim be DENIED. Finally, it is recommended that Plaintiff's Motion for Summary Judgment be DENIED in its entirety.

## NOTICE OF RIGHT TO OBJECT

The parties are hereby advised of their right to file an objection to this Report and Recommendation with the Clerk of this Court by **March 9, 2015**, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. Failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## STATUS OF THE REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned magistrate judge in the captioned matter.

**ENTERED** on February 20, 2015.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE